J-S27008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY FIGUEROA | : | |
| | : | |
| Appellant | : | No. 1959 EDA 2017 |

Appeal from the Judgment of Sentence May 25, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002676-2014,
CP-51-CR-0004149-2012, CP-51-CR-0005488-2014

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                **FILED MAY 21, 2018**

Anthony Figueroa appeals from the judgment of sentence, imposed in the Court of Common Pleas of Philadelphia County, following the revocation of his probation at multiple bills.  Counsel has moved to withdraw pursuant to **Anders** and **Santiago**.[1]  Upon review, we affirm and grant counsel's petition to withdraw.

On July 2, 2012, Figueroa was convicted, in a nonjury trial before the Honorable Charles E. Ehrlich, of three violations of the Uniform Firearms Act

---

[1] **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

("2012 case").[2]   On August 27, 2012, Judge Ehrlich sentenced him to an aggregate sentence of 11½ to 23 months' imprisonment, followed by a 5-year probationary term. This Court affirmed Figueroa's judgment of sentence, and discretionary review was not sought.

While the 2012 case was pending on direct review, Figueroa was arrested on July 24, 2013, and charged with possession of a controlled substance[3] ("PWID") and conspiracy[4] ("2013 case").  On December 23, 2013, Figueroa appeared before Judge Ehrlich for a violation of probation hearing with respect to the 2012 case.  Judge Ehrlich ordered that probation be continued, directed Figueroa to enroll in school, and ordered him to seek and maintain employment.

On April 22, 2014, Figueroa was again arrested and charged with PWID ("2014 case").  On May 28, 2014, Figueroa appeared before Judge Ehrlich on the 2013 case and pled guilty to PWID and conspiracy.  Judge Ehrlich imposed an aggregate, negotiated sentence of 11½ to 23 months' imprisonment, followed by 3 years' probation.  Figueroa did not appeal this judgment of sentence.  On that same date, Figueroa also pled guilty before Judge Ehrlich

---

[2] Figueroa was convicted of carrying a firearm without a license, 18 Pa.C.S.A. § 6106; carrying a firearm in Philadelphia, 18 Pa.C.S.A. § 6108; and possession of a firearm by a prohibited person, 18 Pa.C.S.A. § 6105.

[3] 35 P.S. § 780-113(a)(30).

[4] 18 Pa.C.S.A. § 903.

to PWID in conjunction with the 2014 case. Judge Ehrlich again imposed a negotiated sentence of 11½ to 23 months' imprisonment, followed by 3 years of probation. Also on that date, Judge Ehrlich held a probation violation hearing with regard to the 2012 case, after which Figueroa was found to be in violation. His probation was revoked as to the 2012 case, and Judge Ehrlich imposed a sentence of 11½ to 23 months' imprisonment, followed by 3 years' probation, to be served concurrently to the sentences imposed in the 2013 and 2014 cases.

On September 6, 2016, Figueroa was once again arrested and charged with PWID ("2016 case"). On May 8, 2017, he appeared before the Honorable Stephanie Sawyer and pled guilty. Sentencing was deferred.

On May 25, 2017, Figueroa again appeared before Judge Ehrlich, charged with violating his probation in the 2012, 2013 and 2014 cases. During that hearing, Judge Ehrlich stated the following:

> THE COURT: What I don't understand is when I first sentenced you – I'm going back to my original notes -- I think the sentence I gave you originally was time in to 23 months. You told me you had a job with your uncle doing landscaping, going to get your GED, and I talked to you about the issues with the juvenile supervision. I think Judge Rebstock had to issue a bench warrant for you. You went to Glen Mills, from what I remember, and the DA was asking for 1½ to 3 years.
>
> Then comes another possession with intent to deliver case in 2013, and I resentenced you and kept you in county. Then another one in 2014.
>
> So what I don't understand is: I think people, as Mr. Mincarelli says, can benefit from programs, can benefit from being in the county prison, a little bit closer supervision and contact with the judge. But this is the third time you've been back before me on a

- 3 -

violation, and it's the same thing. You were dealing drugs. That's what it is.

. . .

THE COURT: Also possession with the intent to deliver. What I had you on originally was a gun case, a constructive possession case, violation of the Uniform Firearms Act.

So what I don't understand is this: We went through this in 2013, in 2014, and now we're in 2016 and 2017. What is it that you didn't get before?

I can understand maybe Glen Mills didn't impress you or whatever it was. But I would have thought when you first came in front of me and saw the DA asking for 1½ to 3, you might see that we were in a different ballgame here, a different place. And then comes the other things, so it seems like nothing will stop the drug dealing.

I understand why you're doing it. You're doing it for money. It's why most people do. The problem is it puts poison in the community. That's the problem.

I understand sometimes people do it and then they stop. But you had -- this is your fifth PWID, if I'm correct. Two as a juvenile and three as an adult, right?

MS. ROSARIO: Yes.

THE COURT: I mean, is there something I'm not aware of, Mr. Figueroa?

THE DEFENDANT: I was -- I was doing what I was supposed to do at first. But I was out there working. I was doing what I was doing. I got my job again. If I go home now, I go straight home and go straight to work. I got my uncle that got me my job.

THE COURT: You told me this before. You were going to go into landscaping with your uncle.

THE DEFENDANT: I got pay stubs and everything, my income tax.

THE COURT: Then why are you dealing drugs? Why is this the fifth drug dealing conviction if you have a job and you have people helping you and pay stubs and everything else? You're paying fines and costs, but you're out there drug dealing. You know, at some point it sort of has to stop.

- 4 -

What was negotiated with Judge Sawyer?

MR. MINCARELLI: 11½ to 23 plus, I believe, 3 or 4 years. I forget.

MS. ROSARIO: I think it was actually like 3 to 23 or something like that, like a time-in sentence. I spoke with the DA on that case who indicated it was a weak case and that was the reason for making that offer, and because he had these VOPs in front of Your Honor.

THE COURT: Look, I don't know what's going to stop it, and I try to give people chances, but when we're on the fifth PWID, I have to look at things differently than I did when were [*sic*] in 2013 and 2014.

N.T. Resentencing, 5/25/17, at 9-13.

After the hearing, Judge Ehrlich found Figueroa to be in violation of his probation and revoked him on all three cases. The court sentenced Figueroa to an aggregate of 30 to 60 months' incarceration, followed by 5 years' probation. Figueroa filed timely post-sentence motions, which were not ruled upon,[5] followed by a timely notice of appeal. On June 30, 2017, counsel filed a notice of intent to file an ***Anders*** brief pursuant to Pa.R.A.P. 1925(c)(4).

In order to withdraw pursuant to ***Anders***, counsel must: (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2)

_____

[5] Pursuant to Pa.R.Crim.P. 708(E), the filing of a motion to modify sentence imposed after a revocation of probation will not toll the 30-day appeal period, unless the trial court expressly grants reconsideration. ***See*** Pa.R.Crim.P. 708, Comment. Thus, because the deadline to appeal was to expire on or about June 24, 2017 and Judge Ehrlich had not yet ruled upon Figueroa's timely-filed motion to modify, counsel filed a notice of appeal on June 20, 2017 in order to preserve Figueroa's appellate rights.

file a brief referring to anything in the record that might arguably support an appeal; and (3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief raising any additional points that the appellant deems worthy of review. ***Commonwealth v. Hernandez***, 783 A.2d 784, 786 (Pa. Super. 2001). In ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), the Pennsylvania Supreme Court held that, in order to withdraw under ***Anders***, counsel must also state his reasons for concluding his client's appeal is frivolous.

Instantly, counsel's petition states that he has made an examination of the record and concluded the appeal is wholly frivolous. Counsel indicates that he supplied Figueroa with a copy of the brief and a letter explaining his right to proceed *pro se*, or with privately-retained counsel, and to raise any other issues he believes might have merit.[6] Counsel has also submitted a brief, setting out the single issue raised by Figueroa and, pursuant to the dictates of ***Santiago***, explains in his petition to withdraw why he believes the appeal to be frivolous. Thus, counsel has substantially complied with the requirements for withdrawal.

Counsel having satisfied the procedural requirements for withdrawal, this Court must conduct its own review of the proceedings and render an

---

[6] Figueroa has not submitted any additional or supplemental filings to this Court.

independent judgment as to whether the appeal is, in fact, wholly frivolous. *Commonwealth v. Wright*, 846 A.2d 730, 736 (Pa. Super. 2004).

Figueroa claims that his sentence was manifestly excessive. This claim raises a challenge to the discretionary aspects of sentencing. Such a claim does not entitle an appellant to review as a matter of right. *Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015). Rather, before this Court can address such a challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.*, quoting *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011).

Here, Figueroa filed a post-sentence motion to modify sentence, filed a timely appeal, and includes in his brief a statement of reasons in support of allowance of appeal pursuant to Pa.R.A.P. 2119(f). Figueroa having complied with the procedural requirements, we must now determine if he has raised a substantial question for our review.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent

with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."

***Commonwealth v. Johnson***, 125 A.3d 822, 826 (Pa. Super. 2015), quoting ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (internal citations omitted).

In his Rule 2119(f) statement, Figueroa asserts that his sentence was excessive and that the trial court abused its discretion by failing to order a pre-sentence investigation ("PSI") report prior to imposing sentence. We have previously held that a court's failure to order a PSI upon resentencing raises a substantial question. ***See Commonwealth v. Carrillo-Diaz***, 64 A.3d 722, 724 (Pa. Super. 2013). Accordingly, we will review the merits of Figueroa's claim.

We begin by noting that trial courts enjoy broad discretion with respect to sentencing. ***Commonwealth v. Walls***, 926 A.2d 957 (Pa. 2007). The court's sentence will not be disturbed absent a manifest abuse of discretion. "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." ***Commonwealth v. Smith***, 673 A.2d 893, 895 (Pa. 1996), citing ***Commonwealth v. Lane***, 424 A.2d 1325, 1328 (Pa. 1981).

Under Pennsylvania's Sentencing Code, a trial court must "follow the general principle that the sentence imposed should call for confinement that

is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

The Pennsylvania Rules of Criminal Procedure vest a sentencing judge with the discretion to order a PSI as an aid in imposing an individualized sentence. Specifically, Rule 702 provides, in relevant part, the following:

> 702. Aids in Imposing Sentence
>
> (A) Pre-sentence Investigation Report
>
> > (1) The sentencing judge may, in the judge's discretion, order a pre-sentence investigation report in any case.
> >
> > (2) The sentencing judge shall place on the record the reasons for dispensing with the pre-sentence investigation report if the judge fails to order a pre-sentence report in any of the following instances:
> >
> > > (a) when incarceration for one year or more is a possible disposition under the applicable sentencing statutes[.]

Pa.R.Crim.P. 702(A). We have previously held that a sentencing judge must either order a PSI report or conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and background. *Commonwealth v. Goggins*, 748 A.2d 721, 728 (Pa. Super. 2000) (en banc). Although Rule 702(A)(2) requires the court to document the reasons for not ordering a pre-sentence report, this Court has held that sentencing courts have some latitude in how this requirement is fulfilled. Specifically, "technical noncompliance with the requirements of Rule

702(A)(2) might have been rendered harmless had the court elicited sufficient information during the colloquy to substitute for a PSI report, thereby allowing a fully informed sentencing decision[.]" ***Commonwealth v. Flowers***, 950 A.2d 330, 333 (Pa. Super. 2008).

Here, the sentencing court did not state its reasons for dispensing with a PSI. However, the record demonstrates that Judge Ehrlich was well-acquainted with Figueroa and his circumstances. Figueroa first appeared before Judge Ehrlich in 2012, when he was convicted of three VUFA charges. Prior to sentencing in that case, Judge Ehrlich ordered a PSI. Over the ensuing five years, Figueroa appeared before Judge Ehrlich three additional times as a result of probationary violations. By the May 2017 resentencing hearing, Judge Ehrlich was very familiar with Figueroa and his extensive criminal history, noting that Figueroa had five convictions for PWID and that all attempts to rehabilitate him had failed. In addition, the record reflects that a ***Gagnon II***[7] hearing summary was prepared for Judge Ehrlich prior to Figueroa's resentencing, reflecting his most recent violations, a supervision summary, and a sentencing recommendation from the department of probation. In sum, we conclude that the trial court possessed more than sufficient information about Figueroa's history and circumstances to enable it to arrive at a fully informed, individualized sentencing decision.

_____

[7] ***Gagnon v. Scarpelli***, 411 U.S. 778 (1973).

Moreover, given Figueroa's recidivism and apparent inability to rehabilitate, the court was within its discretion to impose the instant sentence that is, in any event, far below the statutory maximum.[8]  The court believed that Figueroa was in need of programming only available in a state institution. As the court noted:

> I hope the state will focus you differently.  I hope when you get out, you'll be different; otherwise, you'll wind up back in front of other judges and you'll end up spending a good part of your life in jail.
>
> Whatever keeps bringing you to this -- whether it's job training, counseling -- I don't know what it is.  You've been through the juvenile system, in county prison, all the other programs. Hopefully this will focus you.

N.T. Resentencing, 5/5/17, at 14.

Accordingly, we can discern no abuse of discretion on the part of the trial court in imposing its sentence.  Figueroa is entitled to no relief.

Judgment of sentence affirmed.  Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/18

---

[8] The maximum penalty for PWID is a term of not more than 15 years, or 180 months.  **See** 35 P.S. § 780-113(f)(1).  Figueroa received an aggregate term of imprisonment of 30 to 60 months.